UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Cr. No. 05-261(03) (RHK-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Luis Ayala-Vargas,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on November 16, 2005, on the pretrial motions of Defendant Luis Ayala-Vargas. Christian S. Wilton, Assistant United States Attorney, appeared on behalf of the Government. Frederic Bruno, Esq., and Julie Loftus Nelson, Esq., appeared on behalf of Mr. Ayala-Vargas (Ayala-Vargas). Ayala-Vargas advances a Motion to Suppress Defendant's Statements (Doc. No. 56) and a Motion to Suppress Evidence Obtained by Search and Seizure (Doc. No. 58). At the motion hearing, Ayala-Vargas stated that he was not challenging the admissibility of his statements and confined his remaining motion to the question of whether officers had probable cause to arrest him. These motions to suppress evidence are referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

I.   BACKGROUND

The prosecution against Ayala-Vargas and his co-defendants originates in an investigation by Officer Chris Ployhart of the Woodbury Police Department. In January 2005, Officer Ployhart (Ployhart)

searched garbage that had been discarded from a residence at 447 Sherburne Avenue in St. Paul. In addition to finding mail addressed to Ayala-Vargas, Ployhart recovered several plastic bags that later tested positive for trace amounts of cocaine.

While working undercover, Ployhart set up a drug purchase at 447 Sherburne Avenue on June 28, 2005. Ayala-Vargas' brother Martiniano, known as "Martin," (Martin) and an unidentified woman greeted Ployhart and invited him into the residence. The woman translated between English and Spanish so that Martin and Ployhart could communicate more easily. They did not discuss a drug transaction, but they agreed that Ployhart should return to the residence about an hour and a half later.

When Ployhart returned, he was greeted by Ayala-Vargas, Martin, and a third man. They went to the kitchen, where Martin retrieved four one-ounce bindles of methamphetamine. According to Ployhart, Ayala-Vargas said that the bindles had "good chunks" and that the drug was "different from the last time." Ployhart paid Martin and received the bindles. Ayala-Vargas then remarked to Ployhart that "you get every week on Tuesday." Ployhart understood this statement to mean that Ployhart purchased methamphetamine on a weekly basis.

Ployhart then placed a telephone call to Martin on the morning of July 18, 2005. Based on his recollection of their voices from June 28, Ployhart believed that Martin answered and passed the telephone to Ayala-Vargas. Ayala-Vargas then asked Ployhart what he was looking for and "how much do you want." Ployhart told Ayala-Vargas that he "would get back to him."

In the ensuing hours, Martin called Ployhart back twice, and Ployhart asked if it was possible to purchase a pound of methamphetamine. Ayala-Vargas called afterwards and asked Ployhart whether he had "the stuff," which Ployhart understood to mean cash for purchasing the drugs. When Ployhart

assented, Ayala-Vargas invited him to visit 447 Sherburne Avenue around 1:30 p.m. that afternoon. Because Ployhart was unable to assemble a surveillance team to monitor the transaction, he did not go to the residence.

Later that afternoon, several officers executed a search warrant at 447 Sherburne Avenue. According to one of those officers, Deputy Christian Freischels of the Ramsey County Sheriff's Office, the officers entered the residence with their weapons drawn. The officers found Ayala-Vargas, Martin, and the previously mentioned third man inside. All three were pat-searched and placed in handcuffs. The officers went on to find an ounce of cocaine and a small amount of methamphetamine on the premises.

While they were still on the premises, Deputy Freischels gave Ayala-Vargas a *Miranda* warning and asked about the drugs. Ayala-Vargas allegedly said, among other things, that he had been involved that day in arranging the purchase of a pound of methamphetamine. The officers took Ayala-Vargas and Martin to jail afterwards but the third man was released.

## II.    DISCUSSION

Ayala-Vargas challenges whether officers had probable cause to arrest him. As part of this challenge, he argues that the arrest occurred when he was first placed in handcuffs, rather than when he was transported to jail. Thus Ayala-Vargas implies that evidence acquired during the search, including the drugs found on the premises and his statement about purchasing a pound of methamphetamine, cannot support probable cause for his arrest. To answer these questions, this Court will initially consider when the arrest occurred, and then turn to the question of whether officers had probable cause to arrest.

The parties here have not disputed that when officers executed the search warrant for 447 Sherburne Avenue, they had the authority to detain Ayala-Vargas. This proposition is consistent with

*Michigan v. Summers*, in which the U.S. Supreme Court held that officers may detain occupants during the execution of a search warrant for a residence. 452 U.S. 692, 705 (1981). Instead Ayala-Vargas argues that, because he was immediately handcuffed, his subsequent detention constituted an arrest.

The *Summers* Court acknowledged that, under "special circumstances," a detention incident to execution of a search warrant may violate the Fourth Amendment. 452 U.S. at 705 n. 21. Federal authorities have since consistently determined that, absent extraordinary circumstances, there is no arrest where occupants are handcuffed for a detention incident to execution of a search warrant. *See, e.g., Torres v. United States*, 200 F.3d 179, 185 (3d Cir. 1999); *United States v. Guadarrama*, 128 F.Supp.2d 1202, 1218 (E.D. Wis. 2001); *Crosby v. Hare*, 932 F.Supp. 490, 493 (W.D.N.Y. 1996). Most recently, in *Muehler v. Mena*, the U.S. Supreme Court examined a case where an occupant was handcuffed for two to three hours during execution of a search warrant. Because these actions were consistent with detention incident to the execution of a search warrant, the Court concluded there was no violation of the Fourth Amendment. 125 S.Ct. 1465, 1472 (2005).

Here Ayala-Vargas was handcuffed, without incident, during a routine execution of a search warrant. His detention was well within the scope of actions that officers could take incident to the execution of a search warrant. Because this detention does not constitute an arrest, his arrest did not occur until the search was completed, when law enforcement made the decision to take Ayala-Vargas into custody.

Probable cause is established when officers have knowledge, at the time the arrest was made, of facts and circumstances warranting a reasonable belief that the suspect had committed a crime. *United States v. Tovar-Valdivia*, 193 F.3d 1025, 1028 (8th Cir. 1999). When a suspect is present for an illegal drug transaction, this fact will support probable cause that the suspect is in a conspiracy to sell illegal drugs.

*See United States v. Mendoza*, 421 F.3d 663, 667-68 (suspect slowly drove by site of drug transaction); *United States v. Segars*, 31 F.3d 655, 659 (8th Cir. 1994) (suspect arrived when drug courier was expected to arrive). Such probable cause may be bolstered by the fact that illegal drugs and paraphernalia are in the suspect's residence, *Frison v. Zebro*, 339 F.3d 994, 997 (8th Cir. 2003), or that the suspect arranged illegal drug transactions over the telephone, *United States v. Oropesa*, 316 F.3d 762, 768-69 (8th Cir. 2003).

Here Ayala-Vargas was present for at least one illegal drug transaction. He played a role in telephone calls setting up a second transaction. And he admitted that, for the second transaction, he had been arranging to purchase a pound of methamphetamine. The transactions were scheduled to take place at Ayala-Vargas' residence. When his residence was searched, illegal drugs were found. Taken together, these facts and circumstances support a reasonable belief that Ayala-Vargas was participating in a conspiracy to sell illegal drugs. Thus officers had probable cause to arrest.

### III. CONCLUSION

For the reasons discussed above, this Court concludes that law enforcement had probable cause to arrest Ayala-Vargas. Because the conduct of law enforcement did not violate the Fourth Amendment, evidence acquired as a result of Ayala-Vargas' arrest may be admitted at trial. This Court recommends, therefore, that Ayala-Vargas' motions to suppress evidence be denied.

### IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Ayala-Vargas' Motion to Suppress Defendant's Statements (Doc. No. 56) be **DENIED.**

2.	Ayala-Vargas' Motion to Suppress Evidence Obtained by Search and Seizure (Doc. No. 58) be **DENIED.**

Dated this 18th day of November, 2005.             s/Jeanne J. Graham

                                                   JEANNE J. GRAHAM
                                                   United States Magistrate Judge

      Under Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 9, 2005, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to ten pages.  A District Court Judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is not appealable directly to the Court of Appeals.